OPINION OF THE COURT
George M. Heymann, J.
Can the petitioner, a religious corporation, recover rent-stabilized premises for the purpose of establishing a Yeshiva, for charitable and educational purposes, on a not-for-profit basis?
Factual Background
On March 18, 2010, the petitioner, a religious corporation, purchased the subject premises, located at 4219 15th Avenue, Brooklyn, New York 11219, for the purpose of relocating its Jewish parochial school, known as Yeshiva Tal Torah. The premises is a 12- family-unit apartment building. According to the petitioner, seven of the apartments are presently vacant and empty, two apartments are preparing to move out and three are currently occupied and in litigation with holdover proceedings.
Since 2005, petitioner has operated Yeshiva Tal Torah, at 1370 Coney Island Avenue, Brooklyn, New York. The property was rented by petitioner until a more suitable location could be found. Having purchased the premises in question, the petitioner now seeks to recover the remaining occupied apartments in order to renovate the entire building to accommodate its approximately 70 students. Petitioner states that the plans call for a study hall on the first floor; a library on the second floor; classrooms and administrative offices on the third floor; and a dormitory for the Yeshiva students on the fourth floor.[1]
On April 29, 2010, the petitioner served a “Notice of Intention to Terminate Tenancy and Not to Renew Lease and Intention to Commence an Action or Proceeding” informing the *557 respondents that pursuant to section 2524.4 (b) (1) of the Rent Stabilization Code (9 NYCRR) (RSC) their leases would not be renewed because the owner “desires to recover possession of the apartment premises for its own non-residential use in connection with its charitable and educational purposes.” The notice further states that its Yeshiva will be relocated to “occupy the entire premises that it purchased for use as a school building and educational institution. The entire premises will be converted to school facilities.”
In October 2010, the petitioner commenced the instant holdover proceedings. On January 6, 2011, the respondents moved to dismiss the proceedings, which were consolidated for the purposes of these motions. On April 8, 2011, the court heard argument on said motions and reserved decision.
Applicable Statute[2]
2524.4 reads, in pertinent part, as follows:
“The owner shall not be required to offer a renewal lease to a tenant . . . and may commence an action or proceeding to recover possession in a court of competent jurisdiction, upon the expiration of the existing lease term, if any, after serving the tenant with a notice as required . . . only on one or more of the following grounds: . , .
“(b) Recovery by a not-for-profit institution. (1) The owner is a hospital, convent, monastery, asylum, public institution, college, school dormitory, or any institution operated exclusively for charitable or educational purposes on a nonprofit basis, and the owner, upon notice to the tenant . . . requires the housing accommodation for its own use in connection with its charitable or educational purposes [and]:
“(ii) the owner requires the housing accommodation for a nonresidential use in connection with its charitable or educational purposes.” (Some emphasis added.)
*558 Discussion and Conclusions of Law
The thrust of the arguments for both parties hinges on the words “any” and “exclusively” as emphasized in the statute set forth above.
It is the position of the petitioner that, notwithstanding the specific institutions listed, the petitioner would qualify for exemption because as a religious corporation it would be covered by the language “any institution.” The respondents, on the other hand, rely on the narrowly worded phrase “exclusively for charitable or educational purposes” to support their positions that the petitioner’s goals and purposes are beyond the scope intended by the Legislature.
The only published decision that directly addresses the issue here is Eaton v New York City Conciliation & Appeals Bd. (56 NY2d 340 [1982]). In that case, the Court of Appeals determined that the residential apartments owned and operated by a religious institution and rented to the general public were not exempt from the rent stabilization laws. There, the religious institution claimed that it was “operated exclusively for charitable purposes on a nonprofit basis” (id. at 342). Similarly, the petitioner herein avers that it intends to use the subject premises exclusively for charitable and educational purposes.
In Eaton (supra), the court noted that “where the statutory language is clear and unambiguous, the court should construe the statute to give effect to the plain meaning of the words used” (id. at 345). The court proceeded to clarify its interpretation of the statute as follows:
“In this case the language of the statute exempts from rent stabilization housing accommodations owned or operated by any institution operated exclusively for charitable or educational purposes on a nonprofit basis. There is no language in the statute which would permit an interpretation providing a similar exemption for institutions operated for religious purposes nor is there statutory language which would suggest this legislative intent. Where as here, the statute describes the particular situations to which it is to apply ‘an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.’ Nor does the statutory reference to monastery or convent serve to define religious institutions generally. Indeed the opposite conclusion could be *559 inferred by virtue of the specific language of the statute which singles out convent or monastery from the application of its provision.
“Had the Legislature intended to extend the exemption to religious institutions, it could have chosen to do so through appropriately worded legislation. In view of the Legislature’s failure to include religious institutions generally within the exemption provisions of the statute an ‘irrefutable inference’ arises that housing accommodations owned or operated by religious institutions are outside the scope of this statute.” (Id. at 345-346 [citations omitted].)
The respondents maintain that the court’s holding in Eaton (supra) precludes this court from reaching any conclusion contrary thereto. The petitioner, on the other hand, avers that because the Yeshiva is currently operated as a charitable, educational and not-for-profit institution it falls squarely within the legislative intent of the statute.
During oral argument, petitioner sought to distinguish Eaton (supra) from the case at bar on the basis that the religious institution in that case was not a “not-for-profit” organization as is the petitioner herein. In upholding the nisi prius court’s dismissal of the petition, the Court of Appeals stated that “[t]he record before us fails to disclose that the subject apartments are owned or operated by an institution operated exclusively for charitable purposes or that the income derived from the rental property is devoted exclusively to charitable purposes.” (Id. at 346.)
While the court agrees that the phrase “any institution” opens the door to allow for religious institutions, the language immediately thereafter, “operated exclusively for charitable or educational purposes,” serves to close that door if the petitioner corporation is not used solely for that intention. To determine the goals and purposes of the petitioner, it is necessary to examine the certificates of incorporation as provided in petitioner’s Exhibit “A” in the affirmation in opposition. The original certificate of incorporation of Congregation Netzach Yisroel was executed on October 10, 1987 and states that it is a “corporation as defined under Religious Corporation Laws of the State of New York, Article 10, Section 192 (1Í 2).”
Paragraph 3 sets forth the “objects and purposes” of the corporation as follows:
*560 “(a) To conduct and maintain a House of Worship in accordance with the traditions of the Hebrew faith and to conduct all communal affairs necessary for a viable community.
“(b) To purchase and sell property, both real and personal; to mortgage and lease property as may be necessary for the conduct and welfare of the corporation.
“(c) Notwithstanding any other provision of these articles, the corporation is organized exclusively for one or more of the following purposes: religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition ... or for the prevention of cruelty to children or animals . . . and shall not carry on any activities not permitted to be carried on by a corporation exempt from Federal income tax . . .
“(d) No part of the net earnings of the corporation shall inure to the benefit of any member, trustee, director, officer of the corporation, or any private individual.”
On June 13, 2004, a certificate of amendment of the certificate of incorporation of Congregation Netzach Yisroel was executed. The relevant amendments are:
Paragraph 1 as amended reads: “(1) The name of the proposed religious corporation is Congregation Netzach Yisroel — Yeshiva Tal Torah.”
Paragraph 3, which sets forth the purposes of the corporation, was amended as follows:
“(3) The purposes of the corporation shall include:
“(a) To establish one of more places of worship for the conduct of Jewish religious services and prayer in accordance with the tenets of the Jewish religion;
“(b) To establish and maintain a Yeshiva for Talmudic and Rabbinic studies.
“(c) To further and support the observance of Jewish religious ethics and ritual practices;
“(d) To engage in charitable and benevolent endeavors; and
“(e) To do any other act or thing incidental to or connected with the foregoing purposes of in furtherance thereof, and to encourage and assist other to do same.
*561 “(f) Notwithstanding any other provision of these articles, the corporation is organized exclusively for one or more of the following purposes: religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition ... or for the prevention of cruelty to children or animals . . . and shall not carry on any activities not permitted to be carried on by a corporation exempt from Federal income tax . . .
“(g) No part of the net earnings of the corporation shall inure to the benefit of any member, trustee, director, officer of the corporation, or any private individual.”
As is readily seen, the amended certificate of incorporation does not limit the institution solely to charitable and/or educational purposes. In fact, rather than reduce the extent of its purposes, it seeks to expand them. While the corporation may be not-for-profit and include among its “exclusive” purposes charitable and/or education goals, the list is far more expansive than that which the statute mandates. The statute is completely narrow in its scope and leaves no room for amplification of its intent.
While the court understands that petitioner purchased the subject premises for the purpose of converting it into an educational institution, its good intentions are not sufficient to overcome the statutory hurdle created by the Legislature. It is not a question of what the petitioner intends to do with the building now that it owns it, it is the petitioner’s current status, as defined by its amended certificate of incorporation, that takes it outside of the strict parameters intended by the Legislature.
Petitioner’s attempt to liken this provision of the statute with that of subdivision (a) of RSC § 2524.4 (occupancy by owner or member of owner’s immediate family) is without merit. Petitioner contends that if an owner buys a house that is occupied by rent-stabilized tenants, pursuant to lease agreements with the prior owner(s), and the new owner has the right to terminate said tenancies for its own personal use, then the petitioner here should be placed in the same position when it purchased the subject premises to terminate the existing tenancies for its “personal” use in creating a Yeshiva.
Subdivision (b) of RSC § 2524.4 (recovery by a not-for-profit institution) is a separate and distinct provision for grounds *562 upon which a landlord can refuse to renew a rent-stabilized lease. The provisions of one are mutually exclusive of the other. Therefore, petitioner’s analogy is insufficient to overcome the language of RSC § 2524.4 (b) (1) (supra).
As stated in Greek Orthodox Archdiocese of N. & S. Am. v Abrams (NYLJ, Oct. 24, 1994, at 24, col 1):
“Where a statute describes the particular situations in which it is to apply and no qualifying exception is added, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded. Had the legislature intended to limit the applicability of Religious Corporation Law sec. 12 (a), as the Archdiocese contends, it could have done so easily through appropriately worded legislation (see, Eaton v NYC Conciliation and Appeals Board, 56 NY2d 340).
“Furthermore, the Court cannot consider any legislative history which contradicts the clear and unambiguous language of the statute. Where, as here, a statute is clear, a court should not attempt to cure an omission in the statute by supplying what it believes should have been put there by the legislature.” (Some citations omitted.)
In that case, the issue revolved around the word “any” and the court held that the Legislature did not intend to limit the applicability of the statute in question.
As noted above, if the focus here were only on the word “any,” then the petitioner’s argument that a religious corporation would be included among the institutions that can maintain this proceeding would be correct. However, having then incorporated the word “exclusively” and limited it to only charitable or educational purposes, the Legislature intended that any institution that has more than just those two purposes is not “exclusive” and cannot refuse to renew rent-stabilized tenancies.
“Although respondent may have functions and attributes which may be characterized as charitable [or educational] there is no demonstration that they are anything but incidental to its religious purposes.” (Eaton at 346.)
Accordingly, the respondents’ motions to dismiss the instant proceedings are granted.

. The architectural floor plans provided in petitioner’s exhibit “D” contain the following: cellar: office space and Mikvah; first floor: office space and synagogue; second floor: study areas and synagogue; third floor: nondesignated rooms.

. Although Rent Stabilization Code (9 NYCRR) § 2524.4 is technically a regulation, the terms “statute” and “regulation” are used interchangeably to refer to it herein.